Martin v. the United States. Mr. Patterson, are you upset about losing your quarterback? A little bit, you know, but a national championship appearance, you know. Well, good morning, at least for a few more minutes anyway. My name is Dalton Patterson. I'm a recent graduate from Notre Dame Law School, and under the guidance of Attorney Bob Palmer, I represent the appellant in this case, Troy Martin. Your Honors, Mr. Martin asserts under penalty of perjury that his trial counsel was ineffective in advising him to reject a 30-year plea and instead encouraged Mr. Martin to proceed to trial where he was subsequently convicted and sentenced to a life in prison. The District Court concerned whether Strickland's prejudice prong was met in respect to Mr. Martin's assertions, granted a certificate of appealability for review of whether his assertions of ineffective assistance of counsel during the plea negotiation process, standing alone. Other than the statement of your client, is there any evidence that there was an offer made? At this point in time, Your Honor, there is no evidence beyond the statement. However, the significant disparity, in addition to the overwhelming evidence against Mr. Martin, indicates that he was prejudiced. Well, was there an opposite? Was there any indication that the lawyer said he did talk to him, or there was none? Or did the prosecution add to that, or anything along the lines? At this point in time, the government, actually, in their response, never said that there was not a plea offer. They just indicated the fact that Mr. Martin had not produced a tangible copy of the offer. They didn't say there wasn't one. They just said he did produce another. Yes, exactly, Your Honor. Your client's petition also says he's actually innocent. His position is he was ready to work 30 years for crimes for which he was actually innocent? Well, Your Honor, Mr. Martin's assertion of innocence is consistent with his marks throughout the pretrial process and through the savings process, that if he had been more properly informed of the facts and the case law of the case, he would have accepted a plea, but was not due to ineffective assistance of counsel. I have trouble understanding how he could be actually innocent and want to plead guilty to 30 years, if that was even offered. Certainly, Your Honor. In terms of whether or not he was, in terms of his claim of innocence, this again goes back to whether he was properly guided during the pretrial process, if he had been properly informed. If we order an evidentiary hearing, who would your witnesses be, and what would they say? Certainly. The witnesses would obviously be his trial counsel, Mr. Martin himself and the government, and what we would learn is what actually occurred during the pretrial conversations. Was there a plea offered? How likely would it be that the government offers a plea in this particular context, and possibly what the conditions of the plea actually were? Could you address our opinion in Gallo-Vasquez, under which it's difficult to see how this very conclusory statement would be enough to require a hearing? Sure. Your Honor, this case differs from Gallo-Vasquez, particularly with regards to the procedure prom. Yes, it is similar in the fact that the defendant did not produce a tangible copy of a plea. However, the case in Vasquez did not turn on that particular objective evidence. Rather, it turned on the prejudice prom of Strickland, because there in that case, the court held that even if a plea was available, the pretrial process indicated that there was no intent by the defendant to accept a plea. For example, during the pretrial process, he actually sent letters to the trial court, articulating that not only did he not want a plea, he wanted his attorney removed because he was, in fact, encouraging him to accept a plea, and this is not the case here. Right, but, well, I've got to tell you, I read that opinion as having alternative holdings. It is saying simply that the, one of the reasons the petition was rejected was that there was no evidence that the government offered petitioner a deal, and we similarly here have no evidence that the petitioner was offered a deal other than this completely, I mean, we don't know anything about the terms. Was he going to have to cooperate? Was this going to be a binding plea agreement? Was it going to be, was it one the district judge would accept? Was it going to be simply a recommendation or what? Well, certainly, Your Honor, and this is why this court has actually articulated the very purpose of a credibility hearing at an evidentiary hearing. Ordinarily, we expect specific evidence to, before we go to that trouble in reopening a case, right? Sure, but, however, this court in recent years has expressed a willingness to move away from the objective evidence standard. This is a different issue. You're talking about the Toro issue? Yes, yes. It's about objective evidence as to whether the defendant would, in fact, have accepted the plea that was offered, right? Sir. And I've shared in some of that skepticism about that objective evidence requirement, but I don't see that as presented here where we don't even have evidence that an offer was made. Certainly, Your Honor, but, again, I would repeat the fact that this difference between significantly from Galavazquez in the sense that, again, he did make indications in the plea trial process that he would have intended to take a plea. Where do we have that? During the pre-trial process? Yes. Where do we have the evidence of that? There's no evidence of that in the record, which, again, is the purpose of an evidentiary hearing to actually expand the record so we can get witness statements that ascertain what exactly happened. Doesn't Mr. Martin remember more than what he said in his petition? In terms of... I'm sorry, Your Honor, can you repeat the question? Who made him an offer, when, what were its terms, binding, advisory, cooperate, not cooperate, the other material terms of the plea agreement? Was it in writing, even? Certainly, Your Honor, but as, again, this Court has held in recent cases such as the mere post-conviction testimony of a significant disparity between the sentence imposed and the plea, in addition to the overwhelming evidence of guilt, can trigger the need for an evidentiary hearing. What case are you talking about? A bill of censor, sir, as a district court case. And in that case, they actually even... How does that fit in with Galavazquez? Well, I'm... The court held that even a self-serving statement could trigger the need for an evidentiary hearing because this court has indicated a willingness to move away from a requirement of an objective evidence standard because there really is no requirement under Strickland for that particular issue. You understand why the courts are reluctant to do that. I mean, it opens the door to everybody. You have to have a hearing and almost anybody that said I was offered a deal and didn't would have taken it if they'd given it to me. Well, sir, in regards to essentially up Floodgate's argument, our position is not any different than this court has taken in recent precedent in regards to Foster, Julian, and others. In addition, that also bears on the deficient performance prong of Strickland where there's clearly circumstances where going to trial would be reasonable if there's an adequate chance of acquittal and if the defendant makes overt position that he would like to proceed to trial. Here, that was not the case. Petitioner Martin was convicted under 21 U.S.C. 841, 843, and 846 for conspiracy of narcotics distribution. In this circumstance... But his claim is, if I recall, boiled down to one thing. He wasn't told he could have gotten a deal. Your Honor, Mr. Martin's claim was that he was informed of a deal but was advised to reject it. Oh, he was told. Yes. And he didn't bring it up. At the trial level? Yeah. I don't believe so, no. Okay. All I've got, maybe I'm missing something, all I've got in his petition is a reference to the government's 30-year plea offer. Yes, Your Honor. Is there anything more than that? No, Your Honor. It is just the statement and now the issue is whether that statement standing alone is enough to trigger an evidentiary hearing. Flawed advice. Yes, Your Honor. Could he be more specific? Well, in terms of, as this Court has held, when there's a significant sentence disparity combined with overwhelming evidence of guilt, that could then trigger a need for an evidentiary hearing. For example, the Court in Julian held that mere post-conviction testimony was enough to trigger an evidentiary hearing, making no mention of an objective evidence requirement and taking into account the disparity of sentence as an indication of prejudice. For these reasons, Your Honor, we ask that this Court grant Mr. Martin's request for an evidentiary hearing on this matter. Thank you. Mr. Fullerton. Good morning. May it please the Court? The District Court properly denied Mr. Fullerton's request for an evidentiary hearing. Before you jump into it, I understand there's no question that there's no written agreement. Is it the position of the government that there was no offer? I don't know the answer. I don't know whether there was any offer. Well, who else would know the answer other than the prosecution? Well, somebody in my office might know. Well, did you ask around or anything? I did not. No. It seems to me that it would be an easy out. All you do is ask around. They didn't really make a deal. If you read Santa Bella very carefully, I mean, there was the fellow that was insisting on somebody going to jail was not the guy who offered the deal. And I was around as a prosecutor and a judge before Santa Bella kicked in, and there was never a written agreement because we always said to the defendant, has anyone made you any threats or promises to induce you to plead guilty? And if the answer was yes, it stopped the whole music. But then Santa Bella came along and we got smart enough to put it in writing. I just note, Your Honor, that the prosecutors who were involved in this case have all left the office by the time I... Most of the prosecutors that I have encountered in the last 20 years will say, when during the time before going to trial, there has been no offer or there has been an offer which I am now withdrawing. They don't do that in your office. I'm unable to say that. It's not your fault. Just your idle curiosity by the message. Anybody making such an offer. I'm unable to say that, but of course, Mr. Martin, it was his burden to come forward with a detailed factual allegation. I know that. Does the office have a practice of always offering a reduced sentence recommendation? Every defendant? No, certainly not. Mr. Martin was the lead defendant in a very serious case. He had been a convicted murderer. There were plenty of reasons not to offer him a plea agreement to reduce sentence. Whether or not one was issued or an offer was made or not, I honestly don't know. Mr. Martin didn't carry his burden, didn't give the district court enough evidence or enough reason to think that an evidentiary hearing would be fruitful, and today has admitted that one of the purposes of the evidentiary hearing would be to find out if a plea had been offered. It's unknown to this day whether a plea had been offered and what the contours of that plea were, if such was made, and what advice, if any, he was given by his lawyer. The district court, this is not an abuse of discretion to refuse to proceed on these vague and conclusory allegations about a plea offer, particularly in a case where, as Your Honor noted, Mr. Martin gives every indication in his 2255 petition that he thought he was innocent and that he thought his defense attorney, that the failures of his defense attorney went to the investigation and defense at trial, not to whether or not he had interfered with a plea, but whether or not he in fact had provided enough of a vigorous defense to prove Mr. Martin's innocence, his factual innocence of the charges. Given this record, we don't think it was an abuse of discretion to deny an evidentiary hearing, and I think as the court has noted as well this morning, the arguments having to do with Toro and Foster and the other cases critical of the Toro rule really go to a different issue here, whether or not if a plea had been made, if flawed advice had been given, what does the defendant need to show in order to prove that in fact he would have taken the deal if the advice had not been, you know, ineffective? And that's just not the issue where we are here. There were several steps obviously before that, and there's nothing to indicate that, well, that rule doesn't come into play, and there's nothing to indicate that an evidentiary hearing was warranted. So we'd ask the court to affirm the ruling of the district court denying Mr. Martin's 2255 petition. Thank you, Mr. Feldman. Mr. Patterson. Your Honors, the government's attorney takes the position that he honestly does not know if a plea existed. Your Honors, is that the very purpose of why we have a district court have an evidentiary hearing to find out the truth of the matter of what actually happened? Further, he was granted, Mr. Martin was granted a certificate of appealability, which should only be granted when there's been a substantial showing of a denial of a constitutional right. Now, the government's attorney argues that the issue here does not have to do with any conclusory statements. In fact, that was the very reason why the district court granted a certificate of appealability to resolve this very issue. Does his statements, his conclusory statements concerning ineffective assistance of counsel during the plea negotiation process constitute a need for an evidentiary hearing? Was there a plea negotiation conference? For this particular issue? No. There was not. At the trial... Hold on. I don't know what you're going to do with it. If you got a hearing, what would you do? You could bring in the two lawyers? We could bring in the two lawyers? You'd start with something, wouldn't you? A statement from one of the lawyers? Certainly, and most of these pleas are done during oral verbal communication, but what we can get from witness statements in terms of credibility is what actually did happen? Was a plea even discussed, let alone offered? The likelihood of a similar circumstance would a plea have been offered? Could you get more from your client as to what happened? And Mr. Martin would give his own statements as well. That would be the whole process of a credibility determination and evidentiary hearing. Have you talked to him? I personally have not, Your Honor. Well, lost on a threshold of discovery. You get stuck with the way it is, that's all. Absolutely, absolutely. Well, Your Honor, for these reasons, we ask that this Court grant Mr. Martin evidentiary hearing on this matter. Thank you very much. Thank you, Mr. Patterson. Mr. Fullerton, thank you. Ms. Bonamici, thank you.